```
____ FILED        ✓ ____ LODGED
____ RECEIVED       ____ COPY

        AUG 2 8 2024

CLERK U S DISTRICT COURT
   DISTRICT OF ARIZONA
BY              EO  DEPUTY
```

GARY M. RESTAINO
United States Attorney
District of Arizona

DIMITRA H. SAMPSON
Arizona State Bar No. 019133
Email: dimitra.sampson@usdoj.gov
JILLIAN BESANCON
California State Bar No. 285869
Email: jillian.besancon@usdoj.gov
RYAN POWELL
Arizona State Bar No. 025695
Email: ryan.powell@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                 Plaintiff,<br><br>     vs.<br><br>Naomi Bistline,<br><br>                 Defendant. | CR-22-08092-002-PCT-SMB<br><br>**PLEA AGREEMENT** |

Plaintiff, the United States of America, and the defendant, NAOMI BISTLINE, hereby agree to dispose of this matter on the following terms and conditions:

1.     **PLEA**

The defendant will plead guilty to Count 51 of the Third Superseding Indictment, Conspiracy to Commit Tampering with an Official Proceeding, in violation of Title 18, United States Code (U.S.C.), Section 1512(k), a Class C felony offense.

///

///

///

2.     **<u>MAXIMUM PENALTIES</u>**

a.     A violation of 18 U.S.C. § 1512(k) is punishable by a maximum fine of $250,000, a maximum term of imprisonment of twenty years, or both a fine and term of imprisonment, and a maximum term of supervised release of three years.

b.     According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

(1)     make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2)     pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3)     serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

(4)     pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

c.     The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

3.     **<u>AGREEMENTS REGARDING SENTENCING</u>**

a.     <u>Sentencing Agreements</u>. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that the defendant's sentence shall not exceed sixty months' imprisonment, followed by a term of supervised release. Nothing in this agreement shall preclude defendant from moving for a downward departure, variance, or sentence below the cap, or the Court from imposing a sentence below the cap. The United

///

1    States will not oppose the defendant's release to Pretrial Services supervision pending

2    sentencing.

3          b.    <u>Restitution</u>. Pursuant to 18 U.S.C. § 3663, 3663A and/or 2248, the defendant

4    specifically agrees to pay full restitution to all victims in an amount to be determined by

5    the court, but in no event, more than $100,000.00 per victim. "Victims" include persons

6    or entities directly or proximately harmed by defendant's "relevant conduct" including

7    conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G.

8    §1B1.3, regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§

9    2259, 3663, 3663(A) or 2248. Pursuant to 18 U.S.C. §§ 3663 and 3664(j)(1), "victims"

10   also include persons or entities (whether private or government: state, federal or tribal) that

11   have paid or costs related to defendant's conduct, including insurance providers and health

12   care providers (including those such as Medicaid, Medicare and AHCCCS).  Even if the

13   victim did not suffer physical injury, the defendant expressly agrees to pay restitution for

14   expenditures and future expenses related to treatment for mental or emotional trauma

15   suffered by the victims.  Such expenditures shall include, but are not limited to: mental

16   health treatment, counseling, and in-patient treatment.  The defendant understands that

17   such restitution will be included in the Court's Order of Judgment and that an unanticipated

18   restitution amount will not serve as grounds to withdraw the defendant's guilty plea or to

19   withdraw from this plea agreement.

20         c.    <u>Assets and Financial Responsibility</u>.  The defendant shall make a full

21   accounting of all assets in which the defendant has any legal or equitable interest.  The

22   defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or

23   transfer any such assets or property before sentencing, without the prior approval of the

24   United States (provided, however, that no prior approval will be required for routine, day-

25   to-day expenditures). The defendant also expressly authorizes the United States Attorney's

26   Office to immediately obtain a credit report as to the defendant in order to evaluate the

27   defendant's ability to satisfy any financial obligation imposed by the Court. The defendant

28   also shall make full disclosure of all current and projected assets to the U.S. Probation

- 3 -

1  Office immediately and prior to the termination of the defendant's supervised release or
2  probation, such disclosures to be shared with the U.S. Attorney's Office, including the
3  Financial Litigation Unit, for any purpose.  Finally, the defendant shall participate in the
4  Inmate Financial Responsibility Program to fulfill all financial obligations due and owing
5  under this agreement and the law.

6        d.    <u>Acceptance of Responsibility</u>.  If the defendant makes full and complete
7  disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's
8  commission of the offense, and if the defendant demonstrates an acceptance of
9  responsibility for this offense up to and including the time of sentencing, the United States
10  will recommend a two-level reduction in the applicable Sentencing Guidelines offense
11  level pursuant to U.S.S.G. § 3E1.1(a).  If the defendant has an offense level of 16 or more,
12  the United States will move for an additional one-level reduction in the applicable
13  Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

14        e.    <u>Non-Binding Recommendations</u>.    The defendant understands that
15  recommendations are not binding on the Court.  The defendant further understands that the
16  defendant will not be permitted to withdraw the guilty plea if the Court does not follow a
17  recommendation.

18  **4.**    **<u>AGREEMENT TO DISMISS OR NOT TO PROSECUTE</u>**

19        a.    Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States, at the time of
20  sentencing, shall dismiss Counts 50 and 52-55 of the Third Superseding Indictment against
21  this defendant only.

22        b.    This agreement does not, in any manner, restrict the actions of the United
23  States in any other district or bind any other United States Attorney's Office.

24  **5.**    **<u>COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION</u>**

25        a.    If the Court, after reviewing this plea agreement, concludes that any
26  provision contained herein is inappropriate, it may reject the plea agreement and give the
27  defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P.
28  11(c)(5).

- 4 -

b.      If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated.  In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings.  The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

**6.    <u>WAIVER OF DEFENSES AND APPEAL RIGHTS</u>**

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c) (except for the right to file a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A) and to appeal the denial of such a motion).  This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

///

///

7.   **DISCLOSURE OF INFORMATION**

a.      The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b.      Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

c.      The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

(1)      criminal convictions, history of drug abuse, and mental illness; and

(2)      financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

8.   **FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

a.      Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

9.   **ELEMENTS**

**Conspiracy**

Beginning at a time unknown, but at least on or between November 26 and

1  December 1, 2022, in the District of Arizona and elsewhere:

2      1.      There was an agreement between two or more persons to commit a violation

3  of 18 U.S.C. § 1512(c)(2), Tampering with an Official Proceeding; and

4      2.      The defendant became a member of the conspiracy knowing of at least one

5  of its objects and intending to help accomplish it.

6                  **Tampering with an Official Proceeding**

7      Beginning at a time unknown, but at least on or between November 26 and

8  December 1, 2022, in the District of Arizona and elsewhere:

9      1.      The defendant or co-conspirator did corruptly obstruct, influence, and

10  impede a foreseeable prosecution before a Court of the United States, an official

11  proceeding, and attempted to do so.

12  **10.    <u>FACTUAL BASIS</u>**

13      a.      The defendant admits that the following facts are true and that if this matter

14  were to proceed to trial the United States could prove the following facts beyond a

15  reasonable doubt:

16      The defendant is a spiritual "wife" and follower of co-defendant Samuel
       Rappylee Bateman.  Like Bateman, the defendant is a practicing member of
17      the Fundamentalist Church of Jesus Christ of Latter-Day Saints ("FLDS"), a
       subset of the fundamentalist Mormon denominations whose members
18      practice polygamy. In 2019, Bateman began to proclaim himself as the new
       Prophet of the FLDS.   At that time, the defendant was living with co-
19      defendant LaDell Bistline, Jr., who was her caretaker.
20
21      Beginning in 2019, Bateman recruited followers, many of whom became his
       "wives."   There were no legal or formal ceremonies to commemorate the
22      "marriages," but "marriage" signified the beginning of Bateman's sexual
       relationship with each of his "wives," including his child "brides."
23
24      In the summer of 2019, Bateman began to travel to Lincoln, Nebraska, to
       claim new wives and bring them back to Colorado City, Arizona. By October
25      2020, Bateman had claimed Jane Does 3, 4, 5, 6, and 7 as child "brides."  The
       defendant "married" Bateman in November 2020.  Later that month, the
26      defendant left Nebraska with Bateman and others (including Jane Doe 3) to
       travel to Colorado City, Arizona.  They stopped in Monument, Colorado, so
27      Bateman could recruit more members of the Bistline family, including Jane
       Doe 11.
28

On November 24, 2020, in Colorado City, Arizona, Bateman instructed the defendant, Jane Doe 3, and another female follower to comfort co-defendant Ladell Bistline, Jr.

On the trip back to Lincoln, on or between November 25 and November 27, 2020, Bateman coordinated group sexual activity in a hotel room. The defendant was present, as were co-defendants Josephine Barlow Bistline and Moretta Rose Johnson (then age 17), other adult followers of Bateman, and Jane Doe 3. Bateman initiated a video call with co-defendants Marona Johnson and Brenda Barlow (who were in Nebarska); at Bateman's direction, Marona Johnson had ten-year-old Jane Doe 6 strip naked and watch a live video stream of sexual activity between Bateman and the others. Co-defendant Ladell Bistline, Jr. also participated in the video call from Colorado City, Arizona.

The defendant was with Bateman when he transported his adult "wives" and child "brides" back from Lincoln, Nebraska, to Colorado City, Arizona, in early 2021, where they all lived together in a single-family home. The defendant witnessed Bateman engage in illegal sexual activity with his child "brides," and she sometimes participated.

In early 2021, Bateman slept with Jane Doe 10 and numerous adult "wives," including the defendant and co-defendant Leia Bistline. Bateman ordered everyone to undress and had sex with Leia Bistline in front of Jane Doe 10.

In April 2021, Bateman had sex with Jane Doe 10 while the defendant and Jane Doe 5 were present.

On or about November 1, 2021, Bateman instructed some of his male followers to engage in sexual activity with some of his "wives" to atone for the male followers' purported sins against Bateman. Bateman gave the defendant to co-defendant Ladell Bistline, Jr. and watched them have sex.

On September 13, 2022, the defendant was present when search warrants were executed on the residences where Bateman and his followers lived. The defendant threw a backpack containing condoms and digital devices out of the window to try and hide them from the FBI.

Bateman was arrested on federal charges, and the Arizona Department of Child Safety (AZ DCS) took custody of Bateman's child "brides" and began dependency proceedings against the parents. In November 2022, Bateman was in custody on federal charges, and additional federal charges related to child sex trafficking were foreseeable. At that time, Bateman and his followers, including the defendant, orchestrated a plan to kidnap Bateman's child "brides" from AZ DCS custody. They successfully kidnapped eight of the nine girls from AZ DCS custody and transported them to Washington State.

As the kidnapping occurred, Bateman was communicating with all his adult "wives," including the defendant. Some of the wives kidnapped the children, while others provided logistical and financial support. The defendant, together with co-defendant Donnae Barlow, picked up Jane Does 7, 8, and 9 after they left AZ DCS custody on November 27, 2022. They drove the girls to a hotel in California, where they met up with co-defendant Moretta Rose Johnson and the other girls who had been kidnapped from AZ DCS custody. The following morning, Bateman made a video call to the defendant. The defendant was in a hotel room with the eight kidnapped girls.

The kidnapped girls, including Janes Does 7, 8, and 9, were found in Spokane, Washington, on December 1, 2022.

b.     The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range

1   of the possible sentence and that my ultimate sentence shall be determined by the Court
2   after consideration of the advisory Sentencing Guidelines.

3       My guilty plea is not the result of force, threats, assurances, or promises, other than
4   the promises contained in this agreement.  I voluntarily agree to the provisions of this
5   agreement and I agree to be bound according to its provisions.

6       I understand that if I am granted probation or placed on supervised release by the
7   Court, the terms and conditions of such probation/supervised release are subject to
8   modification at any time.  I further understand that if I violate any of the conditions of my
9   probation/supervised release, my probation/supervised release may be revoked and upon
10  such revocation, notwithstanding any other provision of this agreement, I may be required
11  to serve a term of imprisonment or my sentence otherwise may be altered.

12      This written plea agreement, and any written addenda filed as attachments to this
13  plea agreement, contain all the terms and conditions of the plea.   Any additional
14  agreements, if any such agreements exist, shall be recorded in a separate document and
15  may be filed with the Court under seal; accordingly, additional agreements, if any, may not
16  be in the public record.

17      I further agree that promises, including any predictions as to the Sentencing
18  Guideline range or to any Sentencing Guideline factors that will apply, made by anyone
19  (including my attorney) that are not contained within this written plea agreement, are null
20  and void and have no force and effect.

21      I am satisfied that my defense attorney has represented me in a competent manner.

22      I fully understand the terms and conditions of this plea agreement.  I am not now
23  using or under the influence of any drug, medication, liquor, or other intoxicant or
24  depressant that would impair my ability to fully understand the terms and conditions of this
25  plea agreement.

26
27  08/28/24                         _Naomi Bistline_
    Date                             NAOMI BISTLINE
28                                   Defendant

- 10 -

**APPROVAL OF DEFENSE COUNSEL**

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.


8-28-24
_____          _____
Date                                 CINDY CASTILLO
                                     JOSE ANTONIO SALDIVAR
                                     Attorneys for the Defendant


**APPROVAL OF THE UNITED STATES**

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

                                     GARY M. RESTAINO
                                     United States Attorney
                                     District of Arizona

                                     DIMITRA SAMPSON  Digitally signed by DIMITRA
                                                      SAMPSON
                                                      Date: 2024.08.26 20:37:11 -07'00'
_____          _____
Date                                 DIMITRA H. SAMPSON
                                     JILLIAN BESANCON
                                     RYAN POWELL
                                     Assistant U.S. Attorneys

- 11 -

## ACCEPTANCE BY THE COURT

_____           _____
Date                                  HONORABLE SUSAN M. BRNOVICH
                                      United States District Judge