JOSE ANTONIO SALDIVAR
State Bar # 022991
Saldivar & Associates, PLLC
2417 N. 24th Street
Phoenix, Arizona 85008
Telephone: 602-314-1340
Facsimile: 602-354-3098
jose@saldivarlaw.com
*Attorneys for Defendant*

CINDY CASTILLO
State Bar # 022383
Castillo Law
2025 N. 3rd Street, Suite 150
Phoenix, Arizona 85004
Telephone: 480-206-5204
Facsimile: 602-663-9386
cindy@castillolawphoenix.com
*Attorney for Defendant*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> vs. <br><br> **NAOMI BISTLINE**, <br><br> Defendant. | No. 3:22-cr-08092-SMB-2 <br><br> **DEFENDANT'S SENTENCING MEMORANDUM** <br><br> *(The Honorable Susan M. Brnovich)* |

Defendant, NAOMI BISTLINE, by and through her undersigned counsel, hereby submits to this Honorable Court her Sentencing Memorandum requesting that this Court impose a time served sentence in accordance with the terms of the plea agreement and the argument presented in this sentencing memorandum. This sentence would be consistent with the United States Sentencing Guidelines and the factors pursuant to 18 U.S.C. § 3553(a). This request is fully set forth in the accompanying Memorandum of Points and Authorities.

RESPECTFULLY SUBMITTED this 26th day of November 2024.

By: /s/ Cindy Castillo
CINDY CASTILLO
JOSE A. SALDIVAR
Attorneys for Defendant

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. <u>**STATEMENT OF FACTS:**</u>

**a. A History of the Defendant's Arrest and Detention**

On December 2, 2022, Naomi was arrested and ordered detained pending trial for a 3-count indictment filed September 6, 2022. A 7-count superseding indictment was filed December 14, 2022, followed by a 56-count second superseding indictment filed May 18, 2023. While Naomi continued being detained she was charged, along with 10 other co-defendants, in a 59-count third superseding indictment filed on January 24, 2024. On August 28, 2024, Naomi plead guilty to Count 51, Conspiracy to Commit Tampering with an Official Proceeding in violation of 18 U.S.C. § 1512(k). The parties stipulated that Naomi's sentence shall not exceed 60 months of imprisonment.

During her presentence interview, Naomi admitted her conduct was illegal, agreed with the factual basis in the plea agreement, and expressed extreme remorse for her involvement in the offense.

**b. Naomi Bistline's Involvement**

Naomi is 24 years old and apart from her "spiritual marriage" to Samual Bateman, she has never been married. Naomi does not have children. She was born into the FLDS community in 1998. She was born to Francis Lee Bistline and Marsha Fawn (Barlow) Bistline who were separated when Naomi was 12 years old when her father was sent away from the FLDS community.

Naomi is one of eleven siblings from her nuclear family. Naomi also had siblings from her father's spiritual marriage to Magdaline Barlow Bistline. Due to her father being sent away when she was 12 and the teachings of the FLDS

community, Naomi was raised in several different households.  She was also estranged from many of her siblings.  At times, Naomi was kept at home and not allowed to go into the community secondary to the teachings of FLDS.

Growing up in the FLDS community, Naomi witnessed firsthand communal living and engaging in complex and plural marriages.  As a result of the community's teachings, she also witnessed the community coming into the attention of law enforcement and Child Welfare services frequently.  Throughout her childhood, Naomi was taught not to trust law enforcement.  She was subjected to coercive persuasion, manipulation, and childhood sexual abuse.  Naomi and members of the community were taught that the government was against them and their religious teachings.  Naomi further lived in fear of being eternally condemned as an apostate if she did not follow the teachings of her leaders.  Naomi never attended public school.  She was homeschooled by her aunt and her sister.  After turning 18, Naomi worked at the airport for a brief period before her spiritual marriage to Bateman.  She also worked in an insurance office; and has worked as a housekeeper.

Ladell Bistline Jr., Naomi's caretaker, who was the patriarch of her family believed that Samuel Bateman was the prophet and introduced Naomi to Samuel Bateman.  At some point, Naomi was made to believe that "she belonged to Samuel Bateman" and that she was being called to him.  On or about November 7,2020, Naomi became Mr. Bateman's spiritual wife.  Upon her spiritual marriage, Naomi was prohibited from having any contact with her family members.

During the brief period of time that she was spiritually married to Mr. Bateman, Naomi remorsefully furthered Samuel Bateman's teachings.  Naomi engaged in acts that she deeply regrets.  Her actions came to a head when on November 27, 2022, she allowed herself to travel with her sister wife to pick up minor children who were in the care and custody of the State and drove them out of state.

Following her arrest, Naomi served approximately 17 months of incarceration prior to her acceptance of the plea in this case and subsequent release. During the pendency of this case, Naomi was diagnosed with an adjustment disorder, depressed mood, trauma and stress related disorder, and dissociative features.

Admittedly, Naomi fell victim to the teachings of her community, Samuel Bateman and his followers. She now realizes the harm that she bestowed on others by being a follower of this community. Naomi feels much shame for not being strong enough to stop the manipulation and abuse. Naomi appeared frozen and frightened, and she was a reluctant historian who appeared quite fearful and confused. Naomi has come to understand that what was happening within her community was wrong. Naomi relates that her incarceration, and the revelation of the atrocities of her childhood and indoctrination was the best thing that ever happened to her. Although she is deeply remorseful that this did not happen sooner, and she is deeply regretful for the harm she caused.

## II. LAW AND ARGUMENT:

### a. General Law

The "starting point and the initial benchmark" of any sentencing is the calculation of the applicable Guideline range. *Gall v. United States,* 128 S.Ct. 586, 596, 169 L.Ed.2d 445 (2007) ( *Gall* ). However, the Guidelines are "not the only consideration"--a district judge should then "consider all of the factors [listed in 18 U.S.C. § 3553(a) ] to determine whether they support a sentence requested by a party." *Gall,* 128 S.Ct. at 596. The judge "may not presume that the Guidelines range is reasonable." *Gall,* 128 S.Ct. at 597.

However, "a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular

case with sufficient justifications." *Gall,* 128 S.Ct. at 594. A sentence departing downward from the Guidelines to impose no or only nominal imprisonment "can be justified only by a careful impartial weighing of the statutory sentencing factors." *United States v. Mcllrath,* 512 F.3d 421, 426 (7th Cir.2008) (quoting *United States v. Goldberg,* 491 F.3d 668, 673 (7th Cir.2007)). That said, the Supreme Court has held that requiring "extraordinary circumstances" to justify a sentence outside the Guidelines range or mandating the use of "a rigid mathematical formula" comes "too close to creating an impermissible presumption of unreasonableness for sentences outside the Guideline range." *Gall,* 128 S.Ct. at 595. A court should "impose a sentence sufficient, *but not greater than necessary,"* to comply with the purposes set out in § 3553. 18 U.S.C § 3553(a).

Under § 3553(a)(2)(B), a court must consider the need for the sentence imposed to afford adequate deterrence to criminal conduct generally. In this case, it is undisputed that Naomi was isolated throughout her childhood and had very little influence from outside of her FLDS community. Additional incarceration for Naomi could produce a result contrary to the instruction of § 3553(a)(2)(A) that a court shall consider the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." *See Gall,* 128 S.Ct. at 599 ("a sentence of imprisonment may work to promote not respect, but derision of the law ...").

**b. Analysis of Sentencing Factors and Recommendation**

**i. The Nature and Circumstances of the Offense.**

In imposing a reasonable sentence on Naomi, the Court must consider the nature and circumstances of the offense of conviction. See 18 U.S.C. § 3553(a)(1). Naomi's unique situation merits the Court to impose a sentence that does not require additional incarceration time.

**ii. Naomi's History and Characteristics.**

The Court should consider, as mitigating factors in her sentencing, all of Naomi's extraordinary qualities. Taken as a whole, Naomi's personal history and characteristics support a sentence that does not require additional incarceration. Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2).  Accordingly, the Court's sentence must: (i) "reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;" (ii) "afford adequate deterrence to criminal conduct;" (iii) "protect the public from further crimes of the defendant; and" (iv) "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)-(D).

Prior to undergoing therapy, Naomi was under extreme mental health trauma.  On August 22, 2023, the Court ordered a psychiatric examination to determine her competency to stand trial.  On October 9, 2023, it was determined that Naomi was subjected to coercive persuasion and indoctrination and found incompetent to stand trial.  A successful 4-month restoration period ensued, and Naomi made astonishing improvements.  She is now able to utilize several coping strategies to manage her feelings and past trauma.

On September 4, 2024, Naomi was ordered release on her own recognizance with pretrial supervision to the third-party custody of her aunt, Carol Barlow Knudson, and she began being supervised by the District of Utah.  Naomi has complied with her conditions of supervision, attends mental health counseling, and has reported as directed to pretrial services.  She has tested negative for all controlled substances.  Naomi has also enrolled in school at Mohave Community College and has her Spring 2025 tuition paid for.  She is registered in 4 classes and hopes to obtain an associate's degree.

Naomi suggests to this Court that her present mental health progress, school enrollment and employment status, lack of drug abuse, family stability and support, and lack of any criminal history merits a sentence that is not "greater than necessary" to achieve federal sentencing goals. The Ninth Circuit in *United States v. Menyweather,* 431 F.3d 692 (9th Cir. 2005), in a rather exhaustive review of a district court's authority to grant a downward departure, ruled that in the "broader appraisal" that is available to district courts after *Booker,* courts can justify consideration of factors such as family responsibilities, age, education and vocational skills, mental and emotional conditions, and employment record.

## 1. Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and to Provide Just Punishment

Not a day past the sentencing in this case will go by without Naomi truly reflecting on how her actions harmed innocent people. Now that Naomi has fully realized the deeply rooted teachings that brought her before this Court, she is overwhelmed with remorse, regret, and humiliation. Thus, the theories of just punishment are served by the term of incarceration Naomi has already served and additional supervised release. Given Naomi's unique circumstances and childhood indoctrination which contributed to her circumstances, such a sentence will provide just punishment, deterrence, respect for the law and protection of the public. The time that Naomi has already served in detention and the additional home detention time along with supervised release will address all these concerns.

## 2. Additional Departure is Warranted and Numerous Grounds Exist for a Variance from the Advisory Guidelines.

Any sentence that is longer than necessary can impeded rehabilitative goals of incarceration, See, *United States v. Collington*, 461 F.3d 805 (6th Cir. 2006) (in drug/gun case for which guidelines advised 188-235 months, a 120-month sentence was upheld because it sufficiently reflected the seriousness of

the offenses while allowing the possibility for defendant to reform and go on to a productive life upon release in his mid-thirties); *United States v. Halsema*, 180 F. Appx 103 (11th Cir. 2006) (24-month sentence upheld in child porn case having a guideline range of 57-71 months, where court relied on expert testimony that a longer term would impair rehabilitation). *United States . v. Pallowick*, 364 F. Supp. 2d 923 (E.D. Wisc. 2005) (defendant convicted of six armed bank robberies sentenced to 46 months, rather than guideline range of 70-87 months, because no one was hurt, defendant made no direct threats, his only prior was a burglary committed shortly before, his severe mental illness of major depressive disorder and anxiety disorder played a major role in the offenses, after arrest he completed in-patient treatment, enrolled in counseling, and took medication, he was not dangerous and unlikely to re-offend, and judge concluded that a lengthier period would not aid rehabilitation but might hinder his progress in counseling, contrary to § 3553(a)(2)(D)).

      Here, Naomi acted out of childhood indoctrination, manipulation, and fear. The time she spent incarcerated was a sufficient punishment and deterrent to demonstrate to Naomi the severity of her actions and the harm that her role played in the suffering of the victims. In the brief time that Naomi was out of custody since her incarceration, she has enrolled in school and is due to start classes in January. Naomi has also started therapy for her childhood trauma. She is also looking for a part-time job. Naomi has received letters attesting to her character and to the support she has outside of the FLDS teachings which led her to these charges. See Attachment 1.

      This is Naomi's first offense as she has not been sent to prison before. *See United States v. Baker*, 445 F.3d 987(7th Cir. 2006) (affirming non-guideline sentence of 78 months from 108 months for defendant convicted of distributing child porn, justified in part by judge's finding that prison would mean more to this defendant than one who has been imprisoned before, which resonated with goal of

"just punishment" in § 3553(a)(2)(A) and "adequate deterrence" in Section 3553(a)(2)(B); *see also United States v. Paul*, 239 F.App'x 353 (9th Cir. 2007) (defendant's 16-month sentence, the top end of the guideline range for unlawful receipt of federal funding, was unreasonably high because defendant was a first-time offender, returned the funds, and displayed remorse); *United States v. Cull*, 446 F. Supp. 2d 961 (E.D. Wis. 2006) (non-guideline sentence of 2 months in jail and 4 months home confinement, where advisory range was 10-14 months for marijuana offense by defendant who had never been confined, was sufficient to impress on him the seriousness of his crime and deter him from re-offending); *United States v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) (generally, a lesser prison term is sufficient to deter one who has not been subject to prior lengthy incarceration).

## III. **CONCLUSION:**

For the foregoing reasons, Naomi respectfully requests that this court review the record, the facts and argument contained in this memorandum, the attached character reference letters, and find that substantial mitigating factors have been presented to warrant the imposition of a sentence that does not require more than time served of incarceration under the circumstances of this case and which is consistent with the terms of the plea agreement and the goals of sentencing.

RESPECTFULLY SUBMITTED this 26th day of November 2024.

                                         */s/ Jose Antonio Saldivar*
                                         Jose Antonio Saldivar
                                         *Attorney for Defendant*

                                         */s/ Cindy Castillo*
                                         Cindy Castillo
                                         *Attorney for Defendant*

# CERTIFICATE OF SERVICE

I hereby certify that on 26th day of November 2024, I filed the Original with the Clerk of the Court using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/CEF registrants:

Dimitra Sampson, Esq.
Dimitra.Sampson@usdoj.gov
*Assistant U.S. Attorney*

Jillian Besancon, Esq.
Jillian.Besancon@usdoj.gov
*Assistant U.S. Attorney*

Ryan Powell
Ryan.powell@usdoj.gov
*Assistant U.S. Attorney*

The Honorable Susan M. Brnovich
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 526
401 West Washington Street, SPC 19
Phoenix, AZ 85003-2151


*/s/ Jose Antonio Saldivar*

Jose Antonio Saldivar